COUCH v ADMINISTRATIVE COMMITTEE OF THE DIFCO
LABORATORIES INCORPORATED SALARIED EMPLOYEES
PROFIT SHARING TRUST

1. Master and Servant—Profit-Sharing Plan—Enforceability.

   The voluntary establishment by an employer of a profit-sharing
   plan for the benefit of its salaried employees who continue to
   render services to it constitutes an offer which is accepted by
   employees who render the desired services, and such employees
   therefore have enforceable rights under the plan.

2. Master and Servant—Profit-Sharing Plan—Noncompetition
   Provisions—Validity—Statutes

   An employee's profit-sharing plan, which provides for a forfeiture
   of payments under the plan when an employee is employed by
   a competitor within one year of termination of employment
   with the employer, does not violate the statute applicable to
   noncompetition contracts because the statute bars only those
   agreements which prevent an employee from engaging in other
   employment, but does not bar restraints upon seeking other
   employment (MCLA 445.761).

Appeal from Wayne, Nathan J. Kaufman, J.
Submitted Division 1 March 10, 1972, at Detroit.
(Docket No. 11757.) Decided December 6, 1972.

Complaint by Frank R. Couch against the Ad-
ministrative Committee of the Difco Laboratories
Incorporated Salaried Employees Profit Sharing
Trust to recover benefits under employment con-
tract. Summary judgment for plaintiff. Defendant
appeals. Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur 2d, Labor and Labor Relations § 217.
[2] 48 Am Jur 2d, Labor and Labor Relations § 1825.

*Harness, Dickey & Pierce* (by *Charles H. Blair* and *H. Keith Miller),* for plaintiff.

*Morris, Stark, Rowland, Regan, Reagan & Prekel,* for defendant.

Before: LEVIN, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

LEVIN, P. J. The Administrative Committee of the Difco Laboratories Incorporated Salaried Employees Profit Sharing Trust appeals from a partial summary judgment in favor of the plaintiff, Frank R. Couch.[1]

Couch was hired by Difco as a salaried employee in 1959. In January, 1962 Difco established a salaried employees' profit sharing plan. In 1969 Couch chose to terminate his employment with Difco and became an employee of Metrix Clinical and Diagnostics Division of Armour Pharmaceutical Company.

Couch was a participant in the profit sharing plan and the value of his interest in the plan as of December 31, 1968, was $17,918.78. He claims that upon termination of his employment he was entitled to receive 50% of that amount.

After Couch's employment terminated he was informed by the administrative committee that his interest in the profit sharing plan had been forfeited because Metrix is a competitor of Difco and the plan provides that a participant shall forfeit any and all payments due or to become due under the plan if he is employed by a competitor within

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] A summary judgment of no cause of action was entered dismissing plaintiff's complaint as to Difco Laboratories Incorporated.

one year of the termination of his employment with Difco.

In entering a partial summary judgment in favor of Couch, the trial judge ruled that the benefits accruing under the plan "constituted part of the salary of the plaintiff * * * and gave rise to an enforceable contract". He further ruled that the "noncompetition clause" was void because it violates the following statutory provision:

"All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void." MCLA 445.761; MSA 28.61.

We agree with the judge that, even though the establishment of the plan was a voluntary act on the part of Difco and it made all the contributions to the trust established under the plan, Couch enjoyed enforceable rights under the plan. We disagree, however, with the judge's conclusion that the provision providing for forfeiture of benefits if a terminated employee becomes an employee of a competitor violates the statutory prohibition of agreements to refrain from particular employment or business. Accordingly, we reverse and remand for such further proceedings as may be appropriate.[2]

---

[2] Couch's complaint alleges that his principal responsibilities at Metrix concern the selection, hiring, and training of sales personnel and the managing of its sales force, and that in the one-year period following termination of his employment with Difco he carefully avoided engaging, directly or indirectly, in any business which was competitive with Difco, and that the annual sales volume of the products which Metrix and Difco market "in common" constitute less than 1/2 of 1% of the total annual sales volume of Difco.

It is apparent that Couch seeks to raise an issue concerning the correctness of the determination by the Administrative Committee of

By establishing the profit sharing plan Difco offered to make certain payments for the benefit of its salaried employees who continued to render services to Difco. Couch, by performing the desired services, accepted that offer and, therefore, has enforceable rights under the plan.[3] Those enforceable rights are, however, subject to the valid provisions of the plan.

Couch cites our decision in *Mackie v State Farm Mutual Automobile Insurance Co,* 13 Mich App 556 (1968), in support of his contention that the noncompetition provision is invalid. Mackie was an insurance salesman. His insurance company employer had agreed that upon termination of his employment he would receive a percentage of his local agency annual earnings provided that he "has agreed in writing not to service policyholders of the company or to compete with the company or interfere with its business for one full year from the date of termination". We ruled that this condition requiring an agreement not to compete was an illegal condition subsequent which did not disturb already vested rights of the insurance salesman.

---

the Difco Laboratories Incorporated Salaried Employees Profit Sharing Trust that he became an employee of a competitor or engaged, directly or indirectly, in business competitive "with the company [Difco]". This issue was neither briefed nor argued, nor have the facts been developed at the trial level. The extent of the authority purported to be vested by the plan in the administrative committee in making such determinations is not clear on this record.

In remanding for further proceedings consistent with this opinion, we intimate no opinion on this aspect of the case.

[3] *See* 1A, Corbin on Contracts, § 153, pp 18–20; *Psutka v Michigan Alkali Co,* 274 Mich 318, 319 (1936); *Cain v Allen Electric & Equipment Co,* 346 Mich 568, 579 (1956); *Hainline v General Motors Corp,* 444 F2d 1250, 1253 (CA 6, 1971); *Bird v Connecticut Power Co,* 144 Conn 456; 133 A2d 894 (1957); Note, *Pension Plans and the Rights of the Retired Worker,* 70 Colum L Rev 909, 917 (1970); Boyer, *Promissory Estoppel: Principle from Precedents: II,* 50 Mich L Rev 873, 884 (1952).

In this case, in contrast with *Mackie,* Couch has neither entered into an agreement nor agreed to enter into an agreement that he will not compete with Difco. Even if Metrix is a competitor of Difco, Couch breached no agreement, either with Difco or under the terms of the profit sharing plan, by going to work for Metrix.

We recognize that the practical effect of the forfeiture provision is to discourage a Difco employee who has built an equity under the profit sharing plan from leaving Difco and seeking other employment. No doubt, that is the purpose of the forfeiture provision.

There is, however, a significant difference between an absolute prohibition upon a former employee accepting competitive employment[4] and penalizing him if he does. An agreement barring other employment, if enforceable, might disable a former employee from earning a living at what is perhaps the only occupation for which he is qualified. The penalty imposed on Couch has no such immediate and overwhelming impact.

The Legislature has chosen to bar only agreements which prevent an employee from engaging in other employment. It has not barred any restraint upon seeking other employment.[5] Nor has it, despite public discussion of forfeitures under private sector retirement plans, declared a public policy against enforcement of such clauses.

In *Rochester Corp v Rochester,* 450 F2d 118, 122–123 (CA 4, 1971), the United States Court of Appeals for the Fourth Circuit stated that the

---

[4] *See E W Smith Agency Inc v Sanger,* 350 Mich 75 (1957).

[5] *Cf Muggill v Reuben H Donnelley Corp,* 62 Cal 2d 239; 42 Cal Rptr 107; 398 P2d 147 (1965), construing § 16600 of the California Business and Professions Code, which provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void".

authorities generally draw a distinction between a restraint on competitive employment under an employment contract and such a restraint under a retirement plan:

> "The strong weight of authority holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography. The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage."[6]

Just as an employee has a recognizable interest in protecting his accrued benefits under a retirement plan, so too an employer has an interest in discouraging his employees from going to work for a competitor. Until the Legislature makes some effort to reconcile and balance these competing interests, the courts will, as they have with so many other questions, attempt to strike an appropriate balance between the claims of employees who have built an equity under a retirement plan after many years of service and the claims of employers seeking to discourage employees possessing valuable know-how from accepting employment with their competitors.

It has been suggested by some commentators that the touchstone for determining the validity of agreements of this kind, absent a legislative solution, is the reasonableness of the restraint; that the courts should not enforce an unreasonable

---

[6] *See Brown Stove Works, Inc v Kimsey,* 119 Ga App 453; 167 SE2d 693 (1969); *Kristt v Whelan,* 4 App Div 2d 195; 164 NYS2d 239 (1957); *Van Pelt v Berefco Inc,* 60 Ill App 2d 415, 427–428; 208 NE2d 858, 865 (1965).

condition.[7] Couch has not contended that this non-competition clause should be denied enforcement because it constitutes an unreasonable or unconscionable restraint.

We conclude that the noncompetition clause, because it does not oblige Couch to refrain from competition, is not violative of the statutory prohibition.

Reversed and remanded for trial. Costs to defendant.

All concurred.

[7] *See* Koehn & Ptacek, *Employer Protection Against Loss of the Key Employee,* 57 Iowa L Rev 75 (1971); Note, *Forfeiture of Pension Benefits for Violation of Covenants Not to Compete,* 61 NW L Rev 290 (1966). *Cf Tobin v General Motors Corp,* 17 Mich App 475 (1969).