Robert C. **BANNERT,**
**Plaintiff-Appellee,**

v.

**AMERICAN CAN COMPANY,**
**Defendant-Appellant.**

No. 74–2365.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1975.

Decided Oct. 23, 1975.

Rehearing Denied Jan. 14, 1976.

Leslie W. Fleming, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., Edward N. Sherry, Griffith B. Price, Jr., Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant-appellant.

Joseph Levin, Dice, Sweeney & Sullivan, Detroit, Mich., for plaintiff-appellee.

Before LIVELY and ENGEL, Circuit Judges, and CECIL, Senior Circuit Judge.

ENGEL, Circuit Judge.

Plaintiff Robert C. Bannert brought suit against defendant American Can Company, seeking relief from the action of the Can Company's Annuity Board permanently terminating his rights to the portion of his retirement benefits contributed by the Can Company. The Annuity Board had terminated the benefits because, upon his voluntary retirement, Bannert had accepted employment with a competitor.

The case, originally brought in the Circuit Court of Wayne County, Michigan, was removed to the district court on the basis of diversity of citizenship. After trial to the court, the district judge entered judgment for plaintiff, determining that Bannert should be fully reinstated under the Can Company's retirement plan whenever he ceased to be engaged or employed with a competitor of the Can Company. The district judge

posited two grounds for his decision. First, he found the action of the Annuity Board in fully terminating Bannert's pension benefits instead of merely suspending them was an arbitrary use of power. Second, he held that under Michigan law a permanent forfeiture of Bannert's retirement benefits would be unconscionable.

We reverse. We hold that the district court finding that the Annuity Board's action was arbitrary is clearly erroneous, and further that the district judge misinterpreted Michigan law in holding that action to be unconscionable.

The salient facts are set out in the district judge's opinion filed May 23, 1974:

Plaintiff had been an employee of the defendant since 1950. At the time of his retirement, August 1, 1971, he was the General Manager of the can manufacturing operations of three (3) American Can Company plants. At that time he was fifty-six (56) years of age. His retirement was voluntary and was classified as early retirement under the terms of the pension plan.

The Plan provided for payment to the plaintiff from the date of retirement of $435.60 per month, of which $96.63 was a result of his own contribution and $338.97 as a result of contributions by the defendant. It also provided additional benefits on death in Section VII(2).

Section XII of the Plan provides in pertinent part:

"If the Annuity Board finds that any retired disabled or former Member is engaged or employed in any occupation or in a business which in its opinion is in competition with American Can Company or any Subsidiary and after due notice such member continues to be so engaged or employed, the Annuity Board may suspend or terminate any right or claim of any such Member or his provisional payee to or in respect of any retirement or other benefit under the Plan except to the extent that the same may be provided by such Member's own contributions under the Plan and the Prior Plans plus Credited Interest to the date of his retirement or termination of his employment and except benefits payable under the Metropolitan Contract or the Equitable Contract; in exercising its discretion under this sentence, the Annuity Board shall not discriminate in favor of the group composed of Members who, during employment by the Company, were officers, shareholders, persons whose principal duties consisted in supervising the work of other employees, or highly compensated employees. The acceptance by a retired, disabled or former Member of any benefit under the Plan shall constitute a representation by such Member that he is not engaged or employed in any such competitive occupation or business. The Annuity Board may require each Member eligible for a retirement or disability benefit under the Plan to acknowledge in writing prior to payment of any such benefit that he will accept payment of benefits under the Plan only upon the condition herein above prescribed."

Section XI of the Plan provides in pertinent part:

"The Plan shall be administered by an Annuity Board, the members of which shall be appointed from time to time by the Board.

"The Annuity Board shall have the exclusive right to interpret the terms and provisions of the Plan and to determine any and all matters and questions arising thereunder or in connection with the administration thereof, including without limitation the right to remedy possible ambiguities, inconsistencies or omissions. All interpretations, determinations and decisions of the Annuity Board in respect of any matter or question arising under the Plan shall be final, conclusive and binding for

all purposes upon all Employees, Members, provisional payees and beneficiaries. The Annuity Board, from time to time, may establish rules for the administration of the Plan and the transaction of the Annuity Board's business."

In this case the plaintiff accepted a position as Manager—Can Fabrication Operation with Pepsico, Inc., at the time of his retirement from the American Can Company, and he has been working since that time for Pepsico, Inc., in that capacity.

The Annuity Board for American Can Company, on September 27, 1971, terminated the plaintiff's benefits paid for by the Can Company as of January 1, 1972 because of "Mr. Bannert's affiliation with Pepsico, Inc. He is engaged or employed in an occupation or business which in the opinion of the Annuity Board is in competition with American Can Company." At a subsequent meeting on December 17, 1971, the Annuity Board "reaffirmed the decision made at the September 27, 1971 meeting". Since January 1, 1972, the plaintiff has been paid only $96.63 a month, the amount due him as a result of his own contributions.

Upon the foregoing facts, the district judge found that Bannert, by accepting employment with Pepsico, Inc., was engaged in an occupation and business in competition with American Can Company. This finding is not disputed on appeal. Nevertheless, the district judge held that a second issue was whether the Board acted in an arbitrary manner in terminating the monthly payments to plaintiff, rather than merely suspending them for the period of Bannert's employment with a competitor.

Since Section XII of the Pension Plan provided that the Board could "suspend or terminate any right or claim of any such Member . . .", the district judge concluded that the Board had an obligation to draw a line and distinguish cases where benefits should be terminated from those where they should be merely suspended. Because the evidence showed the Board had never considered the option of suspension as a possible alternative in Bannert's case, the district court found the Board's action to be an arbitrary use of power, especially in the absence of any showing that, while Bannert was employed by Pepsico, he had abused any confidence or revealed any trade secrets:

> In this matter it seems to the court that the board did not act in good faith judgment on reasonable grounds, but indulged in an arbitrary use of power. *Hainline v. General Motors Corp.,* 444 F.2d 1250, 1258 (6th Cir. 1971).

In *Hainline v. General Motors Corp., supra,* a former General Motors employee brought suit to recover installments of General Motors stock and cash awarded to him as bonuses during his employment pursuant to the General Motors Bonus Plan. Hainline had resigned his job because his daughter's delicate health required that he relocate his family in a warmer climate. The committee which administered the Bonus Plan decided that plaintiff was not entitled to receive any further disbursements of accumulated bonus cash or stock. The district court entered summary judgment for defendant. This court reversed, holding that there was a genuine issue of fact as to whether the committee, in denying plaintiff bonus awards under the plan, exercised a good faith judgment on reasonable grounds or indulged in an arbitrary use of its power. The plan gave the committee "absolute discretion" to determine who was eligible under the plan to receive bonus awards. In responding to the defendant's contention that this provision made the committee's decision conclusive, Judge Miller observed:

> In general, the power to exercise discretion is not the power to act arbitrarily; discretion may not be abused by those to whom it is entrusted, and this fact holds true no less in the private than in the public sector. While

courts should be wary of interfering with the judgment of corporate executives, it has been held that such judgment cannot stand if fraud or bad faith was shown. 444 F.2d at 1255 (citation omitted).

*Hainline* quoted with approval the language used by the court in *Siegel v. First Pennsylvania Banking and Trust Co.,* 201 F.Supp. 664 (E.D.Pa.1961), wherein the court stated that the applicable standard of review of the committee's decision was whether the committee was guilty of "fraud or such gross mistakes as imply bad faith or failure to exercise an honest judgment". 201 F.Supp. at 669.

■ Given this very restrictive standard of review of the Annuity Board's decision, we conclude that the district court finding that the Board's action here was an arbitrary use of power is clearly erroneous. There was no evidence that the Board's action was based upon any personal malice or ill will toward Bannert, nor was there evidence of bad faith or fraud. The crux of the district judge's decision is found in this paragraph of his opinion:

> The terms of the contract empower the board to either "suspend" or "terminate" the rights or claims. These are quite different terms. "Suspend" indicates a temporary discontinuance of benefits while "terminate" suggests a permanent cessation of rights under the contract. The use of the two terms suggests that it was intended in some instances that persons who are in competition with the America Can Company be suspended, and in some instances that they be terminated. The board had the obligation to draw a line and distinguish cases that should be terminated from those that should be merely suspended. The evidence in

this case, however, indicates that all persons found to be in competition have been terminated and the minutes of the board hearings do not indicate that suspension was ever considered as a possible alternative.[1]

We cannot agree with the district court that the fact that the Annuity Board follows a policy of terminating pension benefits, rather than merely suspending them, when an employee voluntarily retires and goes to work for a competitor, is evidence of arbitrary action by the Board. As noted by the district court, the plan gives the Board the option of terminating or suspending benefits. However, we do not think that this fact precluded the Board from adopting a policy of termination where an employee who *voluntarily* retires goes to work for a competitor. As noted by appellants, mere suspension of benefits would provide no incentive for an employee like Bannert, who had many productive years left before normal retirement, to remain at American Can rather than retiring voluntarily and joining a competitor. Were Bannert to remain with American Can, he would have continued to receive his salary until retirement and would then receive full retirement benefits. On the other hand, if Bannert were to voluntarily retire and join a competitor, he would receive his salary from the competitor until normal retirement, and then would receive his full pension from American Can. In short, Bannert would lose nothing by retiring voluntarily and joining a competitor.

■ In finding the Board to have acted arbitrarily, the district court deemed important the fact that there was no evidence showing Bannert had divulged any trade secrets or abused any confidence reposed in him by the Can Compa-

---

1. The district court conclusion that the Annuity Board never considered the option of suspension is not entirely correct. The Board's policy was to suspend benefits for a 90-day period and allow the former employee to sever his connections with the Can Company's competitor. Only if this did not occur were the benefits permanently terminated. The district court was correct in concluding, however, that the Board never deviated from its policy of termination of benefits after the 90-day grace period in cases of voluntarily retiring employees such as Bannert.

ny.  This fact might be persuasive were we to conclude that the only purpose of the forfeiture provision was to prevent key employees from going to work for a competitor.  However, as argued by appellants, a central purpose of the retirement plan was to encourage employees to stay with the Can Company until normal retirement age.[2]  Such a purpose is not effectuated any time an employee leaves before the normal retirement age, irrespective of whether or not he divulges trade secrets to his new employer.  Thus, we cannot agree that the failure of the Annuity Board to consider whether Bannert had breached any confidence before deciding to terminate his benefits rendered its decision arbitrary.[3]

We do not decide whether the policy of always terminating benefits when an employee voluntarily retires as adopted by the Board is necessarily a wise or prudent one.  But, as noted in *Hainline, supra,* such a judgment of the Board can only be overturned if the Board was guilty of fraud or such gross mistakes as to imply bad faith or a failure to exercise an honest judgment.[4]  In view of what we conceive to be cogent reasons for the adoption of a uniform policy with respect to voluntarily retiring employees, and the lack of any evidence that the Annuity Board acted in bad faith, we must conclude that the district court holding that the Board's action was arbitrary is clearly erroneous.

The second basis for the district court's decision was its holding that under Michigan law,[5] the permanent forfeiture of benefits was unconscionable:

It seems to this court that it is reasonable to suspend payments during the period of competition but in the absence of a showing before the Annuity Board of some special hardship to the Can Company, a showing absent from the minutes of the board in this case and one not supported by any evidence produced in court, termination of payments resulting in the permanent forfeiture of the person's right under the pension agreement would be unconscionable.

Under M.C.L.A. § 445.761, M.S.A. § 28.61, all agreements and contracts by which any person "promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable .  .  .  are hereby declared to be against public policy and illegal and void."  In *Couch v. Administrative Committee of Difco Laboratories Incorporated Salaried Employees Profit Sharing Trust,* 44 Mich.App. 44, 205 N.W.2d 24 (Mich.Ct.App.1972), the Michigan Court of Appeals held that the cited statute did not itself bar a forfeiture clause in a pension plan which terminated benefits, should the employee engage in competitive employment.  In so ruling, Judge Levin cited with approval language from the decision of the Fourth Circuit in *Rochester Corporation v. Rochester,* 450 F.2d 118, 122–123:

**2.** Of course, Bannert could have retired voluntarily and, had he not gone to work for a competitor, would have received "Early Retirement" benefits as provided by Section V of the Plan.  In Bannert's case, these benefits would be considerably less than the benefits he would receive upon "Normal Retirement" at age 65.  We think that this illustrates that a purpose of the Retirement Plan was to encourage employees to remain with the Can Company until normal retirement age.

**3.** It is difficult to see, in any event, how the Annuity Board would be able to determine, at the time it made its decision, whether any trade secrets had been divulged or confidences breached by Bannert since he had left his position with the Can Company only a few months prior thereto.

**4.** We do not believe that the fact that the Board made its decision in Bannert's case pursuant to an established policy rather than on an individualized basis indicates that its members failed to make an "honest judgment".  The record indicates the Board had before it all the facts relevant to Bannert's case when it rendered its decision and, as we have noted earlier, we believe there were cogent reasons for deciding claims pursuant to an established policy rather than on an individualized basis.

**5.** Michigan law was applied by the district judge and neither party on appeal has argued that any other law should be applied.

"The strong weight of authority holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography. The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage." (Footnote omitted)

Judge Levin then went on to observe:

Just as an employee has a recognizable interest in protecting his accrued benefits under a retirement plan, so too an employer has an interest in discouraging his employees from going to work for a competitor. Until the Legislature makes some effort to reconcile and balance these competing interests, the courts will, as they have with so many other questions, attempt to strike an appropriate balance between the claims of employees who have built an equity under a retirement plan after many years of service and the claims of employers seeking to discourage employees possessing valuable know-how from accepting employment with their competitors. 205 N.W.2d at 27.

The issue of reasonableness of the restraint or whether it was unconscionable was not before the court in *Couch, supra,* because the plaintiff had not raised it. The court's citation of the above quoted language from *Rochester Corp. v. Rochester, supra,* indicates, however, that the court felt that the prevailing weight of authority was to the effect that such forfeiture provisions in retirement plans are not unreasonable. Further, the court cited on the question of reasonableness of the restraint the earlier opinion of the Michigan Court of Appeals in *Tobin v. General Motors Corp.,* 17 Mich. App. 475, 169 N.W.2d 644 (1969). In *Tobin,* the court had before it the question of the validity of the same sections of the General Motors Bonus Plan involved

in *Hainline, supra.* Plaintiff, a former employee of General Motors had voluntarily retired and gone to work for a competitor. The Bonus and Salary Committee determined that plaintiff had lost his right to receive unpaid bonus awards and undelivered stock credits. Plaintiff sued for recovery of such amounts, and G–M moved for summary judgment which the district court granted. The question on appeal, as stated by the Court of Appeals, was whether the provisions of the plan calling for forfeiture of the accumulated bonus awards and stock options were "illegal and/or void". 169 N.W.2d at 647. In concluding that such a provision was not illegal or void, the court cited with approval *O'Madigan v. General Motors Corp.,* 202 F.Supp. 190 (E.D.Mo.1961), *aff'd,* 312 F.2d 250 (8th Cir., 1963), also involving the forfeiture provisions of the General Motors Bonus and Salary Plan. The district court in *O'Madigan* had granted summary judgment for defendant against a claim that the Committee had wrongfully forfeited plaintiff's benefits. In affirming, the Court of Appeals stated:

Having analyzed the bonus plan under which the awards were made, having examined the record and briefs of the parties and the authorities upon which they rely, and having carefully reviewed other pertinent authorities, we are satisfied that paragraph 8(a) of the bonus plan is valid and, for the reasons stated in Judge Weber's opinion with which we are in full accord, we affirm. 312 F.2d at 251.

■ The Michigan Court of Appeals' summary rejection in *Tobin* of the claim that the forfeiture provisions of the General Motors Bonus Plan were "illegal and/or void" and its recognition in *Couch, supra,* of the employer's interest in retaining key employees and discouraging them from going to work for a competitor lead us to conclude that the Michigan courts would not find forfeiture unconscionable or unreasonable here. This is particularly so where an employee voluntarily resigns and accepts employment with a competitor since, as

we have noted earlier, a suspension of benefits will not effectuate a central purpose of the plan, to induce employees to remain with the corporation.[6]

At oral argument, it was suggested that the result in this case might be affected by the passage of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* Accordingly, we requested and received supplemental briefs discussing the possible impact of this federal statute upon the facts presented here. Upon reflection, however, we conclude that we should not pass upon this issue since it was not raised in the district court. *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *Schneider v. Electric Auto-Lite Company,* 456 F.2d 366, 375 (6th Cir. 1972).

The judgment of the district court is reversed and remanded for entry of judgment for defendant. Costs awarded to appellants.

---

**6.** We are aware that the same issue herein presented is pending before the Michigan Supreme Court in *Woodward et al. v. Cadillac Overall Supply Co.,* No. 56015, argued June 4, 1975. The issue presented for review therein, as stated in the Michigan State Bar Journal, Vol. 53, p. 735, is: "Legality of a provision of an employee's retirement plan requiring forfeiture of benefits if an employee goes to work for a competitor."