966 F.2d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jennie HUFFSTETLER, Plaintiff-Appellant,
v.
Martin E. O'BOYLE, John E. O'Boyle, Catherine O'Boyle and
New Midland Plaza Associates, Defendants-Appellees.
 No. 91-5604.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1992.
 
 Before RALPH B. GUY, Jr., BOGGS and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case involves a dispute between a commercial landlord and a business tenant who alleged breach of a lease agreement and intentional interference with plaintiff's business. The district court granted summary judgment for the defendant landlord. We affirm.
 
 
 2
 * In February 1989, plaintiff Jennie Huffstetler entered into a lease agreement with defendant New Midland Plaza Associates as landlord, to locate her business, known as "Body Business," in the New Midland Plaza Shopping Center in Alcoa, Tennessee. The individually named defendants are partners in New Midland Plaza Associates, a Tennessee general partnership. Defendants John and Catherine O'Boyle are parents of defendant Martin O'Boyle, who signed the lease agreement on behalf of the landlord.
 
 
 3
 Plaintiff alleges that the landlord, without proper cause or justification, illegally and in breach of the lease agreement, padlocked and changed the locks on her business on Thursday, May 9, 1989, effectively locking her out of her business. However, defendants respond that their action was justified, as plaintiff had breached the lease agreement, which required her to conduct her business "continuously, actively and diligently" in an "efficient, businesslike and reputable manner."
 
 Section 4.02 of the lease provides:
 
 4
 § 4.02. Occupancy. Tenant will occupy the Demised Premises promptly upon commencement of the term and thereafter throughout the term Tenant shall, under Tenant's Trade Name, continuously, actively and diligently conduct the Permitted Use on the whole of the Demised Premises in an efficient, businesslike and reputable manner, maintaining in the Demised Premises an adequate staff of employees and a full stock of seasonable merchandise and employing Tenant's best efforts and abilities to the end that the maximum Gross Receipts which can reasonably be produced from the Demised Premises shall be produced. Tenant shall conduct its business in the Demised Premises for the Required Operating Hours, at a minimum. The Required Operating Hours may be increased or reduced (and subsequent to any such increase or reduction, may be increased or reduced, without limitation as to the number of increases or reductions) as determined by the Landlord.
 
 
 5
 The required operating hours are 9:00 A.M. to 9:00 P.M., seven days per week, as set forth in the "Basic Lease Provisions" portion of the lease. The landlord has the right to exercise his rights and remedies under the lease without giving prior notice and without allowing a grace period in which to cure a default of the tenant if the tenant "shall have temporarily or permanently ceased operating and using the Demised Premised to the extent and in the manner required under Article IV hereof...." Lease § 24.01.
 
 
 6
 The district court found that there was no genuine issue of material fact that plaintiff had breached § 4.02 of the lease by temporarily ceasing to operate and use her rented business space in early May 1989. In her deposition, the tenant admits that she hurt her back prior to May 8, 1989, that she had no employees; and that while she went to her business to receive phone messages "there was a couple, two or three days, I guess, that I didn't--wasn't able to go at all." The district court concluded that the plaintiff's conclusory statement in her affidavit that she did not cease permanently or temporarily to operate her business did not defeat a motion for summary judgment. The lease obligated her to operate her business "continuously, actively and diligently ..." seven days a week, twelve hours a day. The district court held that "the fact that she may have been ill is not a legal excuse for violating the lease provisions. The defendants had the legal right to take the actions they took on May 9, 1989." The tenant now appeals.
 
 II
 
 7
 On appeal, Huffstetler argues that the district court failed to rely upon proper statutory and case law pertaining to a landlord's ability to reenter leased premises. Specifically, plaintiff relies on T.C.A. § 29-18-101, which provides:
 
 
 8
 Unlawful entry prohibited--no person shall enter upon any lands, tenements or other possessions, and detain or hold the same but where entry is given by law, and then only in a peaceable manner.
 
 
 9
 Plaintiff argues that even though the lease agreement provides a "right of reentry clause" and even though there was no actual force or violence involved, the defendant landlord's entry upon the leased premises was illegal under this statute.
 
 
 10
 While we would rule against the plaintiff on the merits, instead we decide this case on procedural grounds, as the plaintiff concedes that this argument and statute was never raised below in the district court. This is the only argument that is raised on appeal. Because the issue was not addressed in the district court, we hold that it would be improper for this court to address such an issue when it is raised for the first time on appeal. See Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154, 1164 (6th Cir.1988); Bannert v. American Can Co., 525 F.2d 104, 111 (6th Cir.1975), cert. denied, 426 U.S. 942 (1976). Therefore, this issue is not properly before this court and we AFFIRM the ruling of the district court.