IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LKQ CORPORATION, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | No. 110, 2024 |
| Appellant, | § | |
| | § | Certification of Questions of |
| v. | § | Law from the United States |
| | § | Court of Appeals for the Seventh |
| ROBERT RUTLEDGE, | § | Circuit (No. 23-2330) |
| | § | |
| Defendant/Counter-Claimant, | § | |
| Appellee. | § | |
| | § | |

Submitted: October 9, 2024
Decided: December 18, 2024

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon Certification of Questions of Law from the United States Court of Appeals for the Seventh Circuit. **CERTIFIED QUESTIONS ANSWERED**.

Travis S. Hunter, Esquire, Alexandra M. Ewing, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, Craig R. Annunziata, Esquire, Joel W. Rice, Esquire (*argued*), James M. Hux, Jr., Esquire, FISHER & PHILLIPS, LLP, Chicago, Illinois *for Plaintiff/Counter-Defendant, Appellant*.

Margaret M. DiBianca, Esquire, DIBIANCA LAW, LLC, Wilmington, Delaware, Tiffany L. Carpenter, Esquire (*argued*), HOWARD & HOWARD ATTORNEYS PLLC, Chicago, Illinois, Joseph W. Barber, Esquire, HOWARD & HOWARD ATTORNEYS PLLC, Royal Oak, Michigan *for Defendant/Counter-Claimant, Appellee*.

Kaan Ekiner, Esquire, COZEN O'CONNOR, Wilmington, Delaware, Malcolm A. Heinicke, Esquire, Phillip H.C. Wilkinson, Esquire, MUNGER, TOLLES & OLSON LLP, San Francisco, California *for Amici Curiae, Managed Funds Association and Securities Industry and Financial Markets Association, in support of Appellant*.

Richard L. Renck, Esquire, DUANE MORRIS LLP, Wilmington, Delaware, Robert M. Palumbos, Esquire, Ryan F. Monahan, Esquire, DUANE MORRIS LLP, Philadelphia, Pennsylvania, Jordan L. Von Bokern, Esquire, Tyler S. Badgley, Esquire, U.S. CHAMBER OF COMMERCE, Washington, D.C. *for Amicus Curiae, Chamber of Commerce of the United States of America, in support of Appellant.*

**SEITZ**, Chief Justice:

In *Cantor Fitzgerald, L.P. v. Ainslie*, we held that a Delaware limited partnership provision allowing the partnership to withhold unpaid distributions from a withdrawing partner who competes with the partnership—a so-called forfeiture-for-competition provision—is not a restraint of trade subject to reasonableness review.[1]  Instead, we endorsed the employee choice doctrine, meaning that the reviewing court should treat the limited partnership provision as an enforceable term subject to ordinary breach of contract defenses.  The United States Court of Appeals for the Seventh Circuit is considering an appeal raising a similar forfeiture-for-competition dispute under Delaware law but arising from a company's restricted stock unit agreements.  It has certified two questions of law to our Court:

> (1) Whether *Cantor Fitzgerald* precludes reviewing forfeiture-for-competition provisions for reasonableness in circumstances outside the limited partnership context?

> (2) If *Cantor Fitzgerald* does not apply in all other circumstances, what factors inform its application? For example, does it matter what type of agreement the forfeiture provision appears in, how sophisticated the parties are, whether the parties retained counsel to review the provision, whether the forfeiture involves a contingent payment or claw back, how far backward a claw back reaches, whether the employee quit or was involuntarily terminated, or whether the provision also entitled the company to injunctive relief?[2]

---

[1] 312 A.3d 674 (Del. 2024).

[2] *LKQ Corp. v. Rutledge*, 96 F.4th 977, 987 (7th Cir. 2024).

3

The main issue is whether the employee choice doctrine applies outside the limited partnership context. As explained below, we advise the Seventh Circuit that *Cantor Fitzgerald* is not restricted to the limited partnership context.

## I.

## A.

We take the facts from the Seventh Circuit's certification request.[3] LKQ Corporation is a Delaware corporation in the auto salvage and recycled parts business. LKQ designates as "Key Person(s)" about two percent of its workforce who are eligible for Restricted Stock Units ("RSUs") through RSU Agreements. The RSU Agreements award units to Key Persons that vest as LKQ stock based on a vesting schedule.[4] The RSU Agreements have non-competition requirements that track in many respects the non-competition provisions in separate Confidentiality, Non-Competition, and Non-Solicitation Agreements ("Restrictive Covenant

---

[3] *Id.*

[4] *See*, *e.g.*, App. to Appellant's Opening Br. at A303 [hereinafter A__] (Section 3, stating "[t]he RSUs are subject to time-based vesting restrictions . . . [u]pon vesting, an RSU shall be converted into one share of common stock of the Company."). *See generally* A303–31 (Robert Rutledge's RSU Agreements 2013–2018), A411–23 (Robert Rutledge's RSU Agreements 2019–2020).

Agreements"). Like the Restrictive Covenant Agreements, some of the RSU Agreements allow for injunctive relief.[5]

In 2009, Rutledge began working as a plant manager at a LKQ facility in Lake City, Florida. As a Key Person, Rutledge was eligible to receive units under RSU Agreements. Rutledge signed RSU Agreements and agreed not to compete with LKQ if he left the company:

> (i) *the Key Person shall not directly or indirectly (1) be employed by, engage or have any interest in any business which is or becomes competitive with the Company or its subsidiaries* or is or becomes otherwise prejudicial to or in conflict with the interests of the Company or its subsidiaries . . . provided, however, that this restriction shall not prevent the Key Person from acquiring and holding up to two percent of the outstanding shares of capital stock of any corporation which is or becomes competitive with the Company or is or becomes otherwise prejudicial to or in conflict with the interests of the Company if such shares are available to the general public on a national securities exchange or in the over-the-counter market . . . .[6]

He also agreed to forfeit his RSUs and any stock issued through the RSUs if he left and competed within nine months post-departure:

> [T]he RSUs, the shares of common stock of the Company underlying the RSUs, or any proceeds received by the Key Person upon the sale of shares of common stock of the Company underlying the RSUs *shall be forfeited* by the Key Person to the Company without any consideration therefore, *if the Key Person is not in compliance, at any time during the period commencing on the date of this Agreement and ending nine*

---

[5] *See* A303–16 (RSU Agreements 2013–2015, allowing injunctive relief for breach of Section 16(a)(ii) (non-disclosure)); A317–31, A411–23 (RSU Agreements 2016–2020, allowing injunctive relief for breach of any covenant under Section 17).

[6] A305 (emphasis added). *See generally* A303–31, A411–23.

5

*months following the termination* of the Key Person's affiliation with the Company and/or its subsidiaries . . . .[7]

Finally, the RSU Agreements reinforced that forfeiture would trigger a repayment obligation for any stock sold under the RSU grants:

> The forfeiture shall be effective as of the date of the occurrence of any of the activities set forth in (a) above. If the shares of common stock of the Company underlying the RSUs have been sold, the Key Person shall promptly pay to the Company the amount of the proceeds from such sale.[8]

Over the years, Rutledge received stock through the RSU Agreements. Rutledge also signed Restrictive Covenant Agreements. As noted earlier, those agreements contained non-competition provisions like the RSU Agreements. Rutledge agreed not to work for a competitor within nine months of leaving LKQ and was subject to injunctive relief for breach.

## B.

In April 2021, Rutledge voluntarily resigned from LKQ and joined a competitor shortly after his departure. At the time he left, he earned an annual base salary of $109,000, in addition to other typical employee benefits.[9] LKQ filed suit against Rutledge in Illinois federal court for breaches of contract and unjust

---

[7] A304 (emphasis added). *See generally* A303–31, A411–43.

[8] A305. The 2013–2015 RSU Agreements and the 2016–2020 RSU Agreements contain substantially similar language. *Compare* A305 (2013 RSU Agreement, Section 16(b)) *with* A414 (2019 RSU Agreement, Section 17(b)).

[9] *LKQ*, 96 F.4th at 986; *see* A121 (para. 16), A149, A472.

enrichment.[10] It sought to enjoin Rutledge from working for a competitor under the Restrictive Covenant Agreements. It also demanded that Rutledge pay LKQ the proceeds from all LKQ shares received and sold under the RSU Agreements.

After the district court dismissed LKQ's unjust enrichment claim, it granted Rutledge's motion for summary judgment on LKQ's contract claims. The court held that, under Illinois law, the Restrictive Covenant Agreements were unreasonable restraints of trade and therefore unenforceable. For the RSU Agreements, which were governed by Delaware law, the district court relied on the Court of Chancery's opinion in *Ainslie v. Cantor Fitzgerald, L.P.*[11] In that opinion, the Court of Chancery held that the forfeiture-for-competition provision in the Cantor Fitzgerald limited partnership agreement should be treated as a restraint of trade subject to reasonableness review. The Illinois district court followed suit and conducted a reasonableness review of the RSU Agreements. It concluded that the RSU Agreement competition restrictions were unreasonable restraints of trade under Delaware law and therefore unenforceable.

---

[10] A045–68.

[11] *LKQ Corp. v. Rutledge*, No. 21 C 03022, 2023 WL 3981127, at *3 (N.D. Ill. June 13, 2023) (citing *Ainslie v. Cantor Fitzgerald, L.P.*, No. 9436-VCZ, 2023 WL 106924 (Del. Ch. Jan. 4, 2023)).

C.

LKQ appealed the district court's summary judgment order to the Court of Appeals for the Seventh Circuit. First, the Seventh Circuit affirmed the district court's dismissal of the unjust enrichment claim. It reasoned that when the parties have reduced their business relationship to a contract, the contract controls unless the claim is outside the contract.[12] Next, it affirmed the district court's summary judgment ruling that, under Illinois law, the Restrictive Covenant Agreements were overbroad and unreasonable. According to the court, the "employment bar . . . foreclose[d] work within an entire industry or market segment."[13] And the court held that LKQ failed to support its contention that the 75-mile geographic scope was coextensive with the Lake City facilities' market.[14]

Turning to the enforceability of the RSU Agreements' forfeiture-for-competition provisions, two weeks before the Seventh Circuit oral argument, this

---

[12] *LKQ*, 96 F.4th at 981 (citing *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004)).

[13] *Id.* at 982 (citations omitted).

[14] The court also refused to "blue pencil" the restrictions. As the court held, it will not modify an unreasonable restrictive covenant "where the degree of unreasonableness renders it unfair" and blue penciling "would result in substantial modification of the terms of the Restrictive Covenant Agreement." *Id.* at 983 (quoting *Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 719 N.E.2d 1141, 1149 (Ill. App. 1999) (emphasis omitted)).

8

court reversed the Court of Chancery's *Cantor Fitzgerald* decision.[15]  In the wake of the *Cantor Fitzgerald* reversal, the Seventh Circuit chose to certify two questions to our Court.

As part of its certification request, the Seventh Circuit recognized that some jurisdictions treat forfeiture-for-competition provisions as restraints of trade and review for reasonableness.  Others adopt what the Seventh Circuit characterized as the majority view: the "employee choice" doctrine.  As the court explained, the employee choice doctrine applies "freedom of contract principles," "leave[s] the ex-employee free to make a living as he chooses," and allows the employee to "calculate[] the cost of choosing to join a competitor."[16]  As a result, the employee "should be held to that choice."[17]

According to the Seventh Circuit, our *Cantor Fitzgerald* decision "lends itself to two interpretations—one broad and another narrow."[18]  On the narrow side, the Seventh Circuit noted that the decision was limited to the facts before it: sophisticated parties, a limited partnership agreement, and forfeiture of unpaid

---

[15] *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674 (Del. 2024), *rev'g* No. 9436-VCZ, 2023 WL 106924 (Del. Ch. Jan. 4, 2023).

[16] *LKQ*, 96 F.4th at 984 (citations omitted).

[17] *Id.*

[18] *Id.* at 985.

contingent benefits. On the broad side, the Seventh Circuit pointed out other aspects of our decision: public policy concerns underlying restrictive covenant reasonableness review are diminished in forfeiture-for-competition provisions; Delaware respects freedom of contract; and our disagreement with the Third Circuit's prediction that Delaware would review forfeiture-for-competition provisions for reasonableness in a suit involving a general manager's deferred compensation plan.[19]

The Seventh Circuit also observed that, "[e]ven if a broad reading is the better reading" of the decision, it saw "meaningful differences" between our *Cantor Fitzgerald* decision and the pending appeal.[20] First, the "strong policy considerations raised by the Limited Partnership Act are not present" in Rutledge's case, which involves RSU Agreements.[21] Rutledge was also a middle manager and not a business executive like the individuals in *Cantor Fitzgerald*. The Seventh Circuit noted further that "[t]he consequences of breach also differ."[22] Specifically, unlike the *Cantor Fitzgerald* partners, who never received the distributions, in

---

[19] *See Pollard v. Autotote, Ltd.*, 852 F.2d 67 (3d Cir. 1988), *amended by* 872 F.2d 1131 (3d Cir. 1988).

[20] *LKQ*, 96 F.4th at 986.

[21] *Id.*

[22] *Id.*

Rutledge's case, LKQ seeks "to claw back stock proceeds long vested and sold."[23] LKQ sought to recover eight years of stock award proceeds, worth hundreds of thousands of dollars, from a middle manager making a relatively modest salary. Finally, the court pointed out that some of the RSU Agreements allowed LKQ to seek injunctive relief and therefore acted like restrictive covenant agreements, even if LKQ never sought to enforce those provisions.

Uncertain about how to predict Delaware law governing forfeiture-for-competition provisions outside the limited partnership context, the Seventh Circuit certified the two questions to our Court.

## II.

LKQ contends that our Court should not distinguish forfeiture-for-competition provisions in limited partnership agreements from those in other agreements. As it argues, Delaware's strong support for freedom of contract outweighs any countervailing public policy interest. LKQ reads our *Cantor Fitzgerald* decision as already having made that choice by endorsing the employee choice doctrine. LKQ also argues that it should receive the benefit of the bargain it struck with Rutledge, even if it requires Rutledge to return the proceeds of the sale of LKQ stock received over the years.

---

[23] *Id.*

Rutledge responds that the employee choice doctrine should be restricted to limited partnership agreements under the Delaware Revised Uniform Limited Partnership Act ("DRULPA"). He stresses that, unlike the *Cantor Fitzgerald* appeal, which involved highly compensated partners who had not yet received distributions, Rutledge is a plant manager earning a modest salary and benefits. It would be unfair for LKQ to recover eight years of LKQ stock sale proceeds.

## A.

We agree with the Seventh Circuit's "broad" view of our *Cantor Fitzgerald* decision. The Seventh Circuit observed that our *Cantor Fitzgerald* decision relied in part on the freedom of contract principles underlying DRULPA. Our reasoning was not, however, limited to the partnership act.

We also relied on Delaware decisions that "uphold[] the freedom of contract and enforce[] as a matter of fundamental public policy the voluntary agreements of sophisticated parties."[24] As we have noted before, respecting private agreements has "wealth-creating and peace-inducing effects," which "are undercut if citizens cannot

---

[24] *Cantor Fitzgerald*, 312 A.3d at 688–89 (emphasis omitted) (quoting *NAF Hldgs., LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 n.14 (Del. 2015)); *see Manti Hldgs., LLC v. Authentix Acq. Co., Inc.*, 261 A.3d 1199, 1216 (Del. 2021) (discussing "Delaware's public policy favoring private ordering" (citing *Salzberg v. Sciabacucchi*, 227 A.3d 102, 116 (Del. 2020))); *Abry Partners V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1061–62 (Del. Ch. 2006) ("[T]he common law ought to be especially chary about relieving sophisticated business entities of the burden of freely negotiated contracts.").

rely on the law to enforce their voluntarily-undertaken mutual obligations."[25] Like the anticompetition condition in Cantor Fitzgerald's limited partnership agreement, a restricted stock unit agreement "stands on different footing than underlies non-competition covenants" because it "does not restrict competition or a former [employee's] ability to work."[26] And like the Cantor Fitzgerald partners, if a former employee wishes to compete with the employer during the relevant time, the employer "need not confer the deferred benefit" on the former employee, who has "agreed to forfeit that benefit upon engaging in competition."[27]

In *Cantor Fitzgerald*, we also found inapt our liquidated damages precedent. We held that forfeiture-for-competition provisions are better viewed as conditions precedent to paying future distributions. When viewed through that lens, "liquidated damages, by definition, are a remedy for breach of contract and are not recoverable for failure to meet a condition precedent."[28]

---

[25] *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 903 (Del. 2021) ("[W]hen parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract. Such public policy interests are not to be lightly found, as the wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations." (quoting *Libeau v. Fox,* 880 A.2d 1049, 1056–57 (Del. Ch. 2005), *aff'd in pertinent part*, 892 A.2d 1068 (Del. 2006))).

[26] *Cantor Fitzgerald*, 312 A.3d at 689.

[27] *See id.*

[28] *Id.* at 686.

Further, in *Cantor Fitzgerald*, we weighed the competing policy concerns and chose the employee choice doctrine. Under the employee choice doctrine, "courts do not review forfeiture-for-competition provisions for reasonableness so long as the employee voluntarily terminated her employment."[29] As we stated, unlike restrictive covenants, forfeiture-for-competition provisions "are not enforceable through injunctive relief" and "do not deprive the public of the employee's services."[30] The restraint of trade policy implications are "diminished—if it does not vanish—" for forfeiture-for-competition provisions.[31]

There are other considerations. Business entities would be discouraged from offering employees additional benefits if we did not respect their contracts. And, for RSU agreements, "Delaware courts have required stock grants to include conditions ensuring that the grants do not constitute waste or a gift of corporate assets."[32] The plan "must contain consideration passing to the corporation, which could take variable forms, such as the retention of services of a valued employee, or the gaining

---

[29] *Id.* at 684.

[30] *Id.* at 691.

[31] *Id.*

[32] *W.R. Berkley Corp. v. Dunai*, 2021 WL 1751347, at *2 (D. Del. May 4, 2021) (citing *Beard v. Elster*, 160 A.2d 731, 735–36 (Del. 1960)).

of services of a new employee."[33] A company must "reasonably expect to receive the contemplated benefit from the grant of the options."[34]

B.

The fact that the LKQ RSU Agreements require the return of benefits already received does not alter our analysis. In *Cantor Fitzgerald*, we relied on *W.R. Berkley Corp. v. Dunai* and *W.R. Berkley Corp. v. Hall*.[35] In *Dunai*, a corporate vice president received more than $200,000 in stock benefits from her former employer under stock grant agreements. The grants, however, were conditioned on non-competition for a year post-departure. If violated, the former employee forfeited the stock, or the employer could demand repayment. Dunai left and took a high-ranking position with a competitor. The district court found that the claw back provisions of the stock grant agreements were enforceable under Delaware law. As the court held, "[t]his is not a $200,000 penalty for working for a competitor; it is returning a supplemental benefit for breaching the terms of a bargain."[36]

---

[33] *Elster*, 160 A.2d at 735–36.

[34] *Id.* at 737.

[35] *Cantor Fitzgerald*, 312 A.3d at 687–88; *see Dunai*, 2021 WL 1751347, *see also W. R. Berkley Corp. v. Dunai*, No. 1:19-CV-01223-SB, 2022 WL 4535659, at *1 (D. Del. Sept. 28, 2022), *judgment entered*, No. 1:19-CV-01223-SB, 2022 WL 17735944 (D. Del. Dec. 16, 2022), *both aff'd*, No. 22-2963, 2024 WL 511040 (3d Cir. Feb. 9, 2024); *W.R. Berkley Corp. v. Hall*, 2005 WL 406348 (Del. Super. Ct. Feb. 16, 2005).

[36] *Dunai*, 2021 WL 1751347, at *2.

15

On appeal, the Third Circuit affirmed the district court and relied on our *Cantor Fitzgerald* decision. Although not binding precedent, the appellate court agreed with the district court that the claw back provision was not "subject to the reasonableness review applicable to restraints of trade and is enforceable as a bargained-for provision in agreements struck by sophisticated parties."[37] Relevant here, the Third Circuit also observed:

> While Dunai contends that [*Cantor Fitzgerald*] is distinguishable because there the forfeiture-for-competition provision featured in a limited partnership agreement, which is not the case here, she offers no persuasive argument why its reasoning does not apply with equal effect to her stock clawback provision. While the Delaware Supreme Court relied in part on the Delaware Revised Uniform Limited Partnership Act (DRULPA) in reaching its conclusion that Delaware public policy favors freedom of contract with respect to forfeiture-for-competition provisions in limited partnership agreements, it also noted the State's broader common law tradition of supporting freedom of contract[.] That tradition of "contractarian deference" supports upholding and enforcing Dunai's stock clawback provision.[38]

Our court also relied on the Delaware Superior Court's decision *W.R. Berkley Corp. v. Hall*. In that case, the employee exercised incentive stock options under an incentive stock option plan resulting in around $180,000 about two months before departing to work for a competitor. The company's stock option plan prohibited competition for six months following departure. The Superior Court granted

---

[37] *Dunai*, 2024 WL 511040, at *3.

[38] *Id.* at *3 n.3 (citations omitted).

16

summary judgment to the employer. It was unpersuaded by the employee's liquidated damages argument and general appeal to unfairness. It found that the court was simply enforcing a contractual obligation to repay an employment benefit that did not restrain the employee's freedom of employment. We see no reason to deviate from these cases.[39]

Finally, we note that, under our Court rules addressing certification requests from other courts, we address only issues of law based on stipulated facts. It might be the case that a forfeiture-for-competition provision which requires a claw back is so extreme in duration and financial hardship that it precludes employee choice by an unsophisticated party and should be reviewed for reasonableness. How to address that factual circumstance is beyond the scope of this request.[40]

III.

We answer the first certified question as follows: *Cantor Fitzgerald* is not restricted to the limited partnership context. Given that *Cantor Fitzgerald* applies

---

[39] *See also Int'l Bus. Machines Corp. v. Martson*, 37 F. Supp. 2d 613, 620 (S.D.N.Y. 1999) (applying New York law and holding that the employee choice doctrine is not limited to future benefits and extends to benefits that have already been paid); *Kidd v. Oakes*, 241 N.Y.S. 2d 403 (App. Term 1963) (holding that the defendant must pay back the money he received under a profit sharing plan when he subsequently went to work for a competitor in violation of a provision in the plan).

[40] The Seventh Circuit pointed out that some of the RSU Agreements had injunctive relief provisions if the employee competed with LKQ. *LKQ*, 96 F.4th at 984–85. The *Cantor Fitzgerald* limited partnership agreement also had a similar provision. And like here, it was not enforced. *See Cantor Fitzgerald*, 312 A.3d at 680 nn.31 & 34, 689.

17

in other circumstances, including to RSU agreements, we need not address the second certified question. The Clerk of the Court is directed to transmit this opinion to the United States Court of Appeals for the Seventh Circuit.