In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-2330

LKQ CORPORATION,

*Plaintiff/Counter-Defendant-Appellant,*

*v.*

ROBERT RUTLEDGE,

*Defendant/Counter-Claimant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-03022 — **Thomas M. Durkin**, *Judge.*

_____

ARGUED FEBRUARY 14, 2024 — DECIDED JANUARY 22, 2025

_____

Before SCUDDER, ST. EVE, and LEE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. LKQ Corporation seeks to enforce Restricted Stock Unit Agreements against its former employee Robert Rutledge. The RSU Agreements contain forfeiture-for-competition provisions—contractual conditions requiring former employees to forfeit certain monetary benefits upon leaving the company and joining a competitor. Because Delaware law governs the RSU Agreements, we certified two questions to the Delaware Supreme Court seeking guidance

on the enforceability of forfeiture-for-competition provisions. The Delaware Supreme Court's answer to our certified questions makes clear that LKQ can enforce its forfeiture-for-competition provision against Rutledge. We therefore reverse the district court's entry of summary judgment for Rutledge on LKQ's claim that he breached the RSU Agreements.

**I**

Robert Rutledge worked as a plant manager at LKQ Corporation for over a decade. The company designated Rutledge as a "key person" eligible to receive restricted stock unit awards on a vesting schedule. LKQ conditioned those awards on Rutledge's execution of Restricted Stock Unit Agreements containing forfeiture-for-competition provisions. Those provisions prohibited Rutledge from working for a competitor within nine months of leaving LKQ. In the event of a breach, the Agreements permitted the company to claw back all proceeds from Rutledge's stock unit awards.

During his many years at LKQ, Rutledge received several stock awards and executed several accompanying RSU Agreements. Eventually, in 2021, Rutledge left LKQ and began working for a competitor five days later. LKQ initiated this lawsuit against Rutledge, alleging unjust enrichment and breach of both the RSU Agreements and separate restrictive covenant agreements. The district court entered summary judgment in favor of Rutledge on all of LKQ's claims, and the company appealed.

We affirmed the district court's entry of judgment on the unjust enrichment and restrictive covenant claims but were unable to determine whether, under Delaware law, we should review the forfeiture-for-competition provisions in the RSU

Agreements for reasonableness before enforcing them. See *LKQ Corp. v. Rutledge*, 96 F.4th 977, 987 (7th Cir. 2024). We observed that, while LKQ's appeal was pending, the Delaware Supreme Court decided *Cantor Fitzgerald L.P. v. Ainslie*, holding that forfeiture-for-competition provisions in limited partnership agreements are generally enforceable under the employee choice doctrine and are therefore not subject to judicial review for reasonableness. See 312 A.3d 674, 692 (Del. 2024). Yet we could not discern with confidence whether *Cantor Fitzgerald* applied outside the context of limited partnership agreements. So we chose to certify the following questions to the Delaware Supreme Court:

(1) Whether *Cantor Fitzgerald* precludes reviewing forfeiture-for-competition provisions for reasonableness in circumstances outside the limited partnership context?

(2) If *Cantor Fitzgerald* does not apply in all other circumstances, what factors inform its application? For example, does it matter what type of agreement the forfeiture provision appears in, how sophisticated the parties are, whether the parties retained counsel to review the provision, whether the forfeiture involves a contingent payment or claw back, how far backward a claw back reaches, whether the employee quit or was involuntarily terminated, or whether the provision also entitled the company to injunctive relief?

The Delaware Supreme Court accepted our certification and answered the first question, holding that "*Cantor Fitzgerald* is not restricted to the limited partnership context." *LKQ Corp. v. Rutledge*, No. 110, 2024 WL 5152746, at *1 (Del. Dec. 18, 2024). The court also determined that, because "*Cantor*

*Fitzgerald* applies in other circumstances, including to RSU agreements," it "need not address the second certified question." *Id.* at \*6.

The appeal now returns to us for resolution.

## II

The Delaware Supreme Court's answer to our first certified question establishes that the forfeiture-for-competition provisions in the RSU Agreements are not subject to judicial review for reasonableness. In no uncertain terms, the court explained that, "in *Cantor Fitzgerald*," it had "weighed the competing policy concerns and chose the employee choice doctrine." *Id.* at \*5. And under that doctrine, "courts do not review forfeiture-for-competition provisions for reasonableness so long as the employee voluntarily terminated her employment." *Id.* (quoting *Cantor Fitzgerald*, 312 A.3d at 684). To be sure, the Delaware Supreme Court left open the possibility of recognizing an exception where a forfeiture provision is "so extreme in duration and financial hardship that it precludes employee choice by an unsophisticated party." *Id.* at \*6. But the court's description of its *Cantor Fitzgerald* holding as "broad" leaves no doubt that any such exception is limited and would apply only in the most extraordinary of circumstances. *Id.* at \*4.

Based on the undisputed facts in the record, we see this case as falling within the broad norm rather than the limited exception. Indeed, the facts here resemble those of *W.R. Berkley Corp. v. Hall*, a case the Delaware Supreme Court described favorably when answering our first certified question. See No. 03-C-12-146WCC, 2005 WL 406348 (Del. Sup. Ct. Feb. 16, 2005). In *Hall*, the Delaware Superior Court enforced a

provision of an employer's incentive stock option plan that prohibited competition within six months of an employee's departure. See *id.* at *5. Importantly, the defendant in *Hall*—a management-level employee earning an annual salary of under $200,000—was not as sophisticated as the defendants in *Cantor Fitzgerald*, who were partners at a global financial services firm. See *id.* at *1; *Cantor Fitzgerald*, 312 A.3d at 678. Still, as the Delaware Supreme Court observed, the *Hall* court "was unpersuaded" by the defendant's "general appeal to unfairness," and allowed his employer to claw back around $180,000 in gains the employee realized from exercising stock options. *LKQ Corp.*, 2024 WL 5152746, at *6.

In much the same way, LKQ's RSU Agreements prohibit competition within nine months of departure and, if enforced, would ultimately allow the company to claw back hundreds of thousands of dollars' worth of stock awards from Rutledge. Though Rutledge may not earn as high a salary as the defendants in *Hall* or *Cantor Fitzgerald*, he is hardly unsophisticated. He held a management position at LKQ, made a salary of around $109,000, and voluntarily agreed to a restricted stock award benefit available only to "key persons"—a designation reserved for less than two percent of the company's workforce.

We of course recognize that enforcement of the forfeiture provision—which would allow LKQ to claw back a substantial sum— would subject Rutledge to a hardship. But, as the Delaware Supreme Court has now explained, the employee choice doctrine is "broad," and Delaware "enforce[s] as a matter of fundamental public policy the voluntary agreements of sophisticated parties." *LKQ Corp.*, 2024 WL 5152746, at *4 (quoting *Cantor Fitzgerald*, 312 A.3d at 689). Rutledge does not

face the type of extraordinary hardship that might allow us to override that fundamental public policy, as determined by Delaware's highest court.

For these reasons, we REVERSE the district court's entry of summary judgment for Rutledge on LKQ's claim that he violated the RSU Agreements. We are mindful that the district court based its summary judgment decision on that claim solely on its determination that the RSU Agreements were unenforceable under Delaware law—without determining whether Rutledge actually breached the Agreements. Because the Delaware Supreme Court's answer to our first certified question speaks only to the enforceability issue and not the issue of breach, we leave it to the district court on remand to determine whether to reopen summary judgment proceedings, proceed to trial, or some combination of those options.